PD-0998-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/8/2015 5:48:29 PM
Accepted 10/9/2015 2:55:45 PM
ABEL ACOSTA
CLERK

PDR #  PD 0998-15

IN THE TEXAS COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS

=====================================================

# ANTHONY BOYD ROBERTSON

Petitioner

v.

# THE STATE OF TEXAS,

Appellee

=====================================================

Petitioner's Petition for Discretionary Review to the
Texas Court of Criminal Appeals from his appeal
to the Third District Court of Appeals
in 03-13-00381-CR

=====================================================

FILED IN
COURT OF CRIMINAL APPEALS

October 9, 2015

ABEL ACOSTA, CLERK

Submitted by

Law Office of Alexander L. Calhoun
4301 W. William Cannon Dr., Ste. B-150 # 260
Austin, Texas 78749
tele: 512/ 731 - 3159
fax: 512/ 233- 5946
Email:  alcalhoun@earthlink.net

Oral Argument is Not Requested

# Identity of the Parties

Pursuant to Rule 68.4 (a), Tex.R.App. Pro., Appellant presents the following persons who are parties to, or have an interest in the final judgment in this cause, so that the Court may determine whether its members are disqualified or should recuse themselves:

Anthony Robertson, Petitioner

Alexander L. Calhoun, App. Atty   4301 W. William Cannon Dr., Ste. B-150, # 260, Austin, TX 78749

Amanda McDaniels, Trial Atty   507 W. 10th St., Austin, TX 78701

Wes Mau, Dist. Atty, D.A.   Hays County Government Center, 712 South Stagecoach Trail, Ste. 2507, San Marcos, TX 78666

Sherri Tibbe, Former D.A.   1301 Rio Grande, Austin, TX 78701

Cathy Compton, Former Asst.D.A.  314 E. Commerce, Suite 720, San
(Trial Attorney)   San Antonio, TX 78205

Amy Lockhart, Former Asst. D.A.  Dallas County District Attorney's
(Trial Attorney)   Office, 133 N Riverfront Blvd LB 19 Dallas, TX 75207

Hon. Bill Henry, Trial Judge   Hays County Government Center, 712 South Stagecoach Trail, San Marcos, TX 78666

# Table of Contents

Identity of the Parties.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Question Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Reason for Review.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Ground for Review (Restated). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

> In Evaluating the Admissibility of a Statement Under the Excited Utterance Exception to the Hearsay Rule, the Court of Appeals' Improperly Substituted An Inquiry Into the Speaker's Emotional Demeanor For the Determination of Whether The Totality of the Circumstances Reflect She Possessed An Opportunity for Reflection.

A. Facts in Support of Granting this Petition. . . . . . . . . . . . . . . . . . . . . . . . 2

B. Argument and Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Conclusion and Prayer.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Appendix A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# Index of Authorities

Cases:

*Apolinar v. State*, 155 S.W.2d 184 (Tex.Cr.App. 2005). . . . . . . . . . . . . . . . . . . . . 8, 9

*Crawford v. Washington*, 541 U.S. 36 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gay v. State*, 981 S.W.2d 864 (Tex.App. – Hous [1st Dist.] 1998). . . . . . . . . . . . 10

*Glover v. State*, 102 S.W.3d 754 (Tex.App. – Texarkana 2002). . . . . . . . . . . . . 10

*Hughes v. State*, 128 S.W.3d 247 (Tex.App.-Tyler 2003). . . . . . . . . . . . . . . . . . 10

*Martinez v. State*, 178 S.W.3d 806 (Tex. Cr. App. 2005). . . . . . . . . . . . . . . . 10, 16

*Mosley v. State*, 960 S.W.2d 200 (Tex.App. – Corpus Christi 1997). . . . . . . . . 10

*McCarty v. State*, 257 S.W.3d 238 (Tex.Cr.App. 2008). . . . . . . . . . . . . . . . . . . . . 9

*Robertson v. State*, 03 - 13- 00381 - CR
 (Tex.App.- Austin, July 23, 2015) . . . . . . . . . . . . . . . . . . . . . . . 1, 11, 12, 13

*Sandoval v. State*, 409 S.W.3d 259 (Tex.App. - Austin 2013). . . . . . . . . . . . . . . 10

*Thompson v. Trevanion*, Skin. 402, 90 Eng. Rep. 179 (K.B. 1693). . . . . . . . . . . . 8

*Tienda v. State*, ___ S.W.3d ___,
 11-11-00283-CR (Tex.App.-Eastland 5-14-2015). . . . . . . . . . . . . 14, 15, 16

*United States v. Boyce*, 742 F.3d 792 (7th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . 7

*Vera v. State*, 709 S.W.2d 681 (Tex.App.-San Antonio 1986). . . . . . . . . . . . . . . 10

*Zuliani v. State*, 97 S.W.3d 589 (Tex.Cr.App. 2003). . . . . . . . . . . . . . . . . . . . . 8, 16

Statutes and Rules:

Tex.R.App.Pro. Rule 66.3 ( c ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Tex.R.Evid. Rule 803(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13


Miscellaneous Authorities:

Crump, David ,   The Case for Selective Abolition of the Rules of Evidence,
        35 Hofstra L. Rev. 585  (Winter 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Vol. 2 *McCormick on Evidence*,  § 272  (7th Ed. 2013). . . . . . . . . . . . . . . . . . . . . 7, 9

Myers, John E.B.  *et al.*, Hearsay Exceptions: Adjusting the Ratio of Intuition to
Psychological Science, 65 Law & Contemp. Probs. 3  (2002) . . . . . . . . . . . . . . . 7

**Statement Regarding Oral Argument**

This case involves a misapplication of well-settled case law by the Court of Appeals of this Court's precedent. The facts are simple. Counsel does not believe oral argument would appreciably benefit this Court's review of the issues involved.

TO THE TEXAS COURT OF CRIMINAL APPEALS:

COMES NOW, Petitioner, ANTHONY BOYD ROBERTSON, who, by and through his undersigned attorney of record, presents this Petition for Discretionary Review pursuant to Tex.R.App.Pro. Rule 66.1 *et seq.*, and would show as follows:

## Statement of the Case

Petitioner was convicted by a jury of the felony offense of Assault with Bodily Injury on a Family or Household Member, Repeat Offender. [Clerk's Record ("C.R."): 8, 53]. [C.R.: 53].   Sentencing was held to the Court, which, after finding a prior felony conviction, assessed a punishment at 14 years confinement in the Texas Department of Criminal Justice. [C.R.: 54 - 55].   Petitioner  timely filed a notice of appeal.

## Statement of Procedural History

The Third District Court of Appeals affirmed Petitioner's conviction. *Robertson v. State*,  03 - 13- 00381 - CR (Tex.App.- Austin, July 23, 2015) (memorandum).  Petitioner did not file a Motion for Rehearing.  Following a grant of an extension to file the  Petition for Discretionary Review, this Petition  is due by October 21, 2015.

## Question Presented

WHETHER, IN EVALUATING THE ADMISSIBILITY OF A STATEMENT UNDER THE EXCITED UTTERANCE EXCEPTION TO THE HEARSAY RULE, THE COURT OF APPEALS' IMPROPERLY SUBSTITUTED AN INQUIRY INTO THE

1

SPEAKER'S EMOTIONAL DEMEANOR FOR THE DETERMINATION OF WHETHER UNDER THE TOTALITY OF THE CIRCUMSTANCES REFLECT SHE POSSESSED AN OPPORTUNITY FOR REFLECTION.

## Reasons for Review

1.    Review is appropriate and necessary because the Third District Court of Appeals has addressed an important issue of the law which conflicts with precedent by this Court and other Courts of Appeals. Tex.R.App.Pro. Rule 66.3 ( c ).

## Ground for Review (Restated)

IN EVALUATING THE ADMISSIBILITY OF A STATEMENT UNDER THE EXCITED UTTERANCE EXCEPTION TO THE HEARSAY RULE, THE COURT OF APPEALS' IMPROPERLY SUBSTITUTED AN INQUIRY INTO THE SPEAKER'S EMOTIONAL DEMEANOR FOR THE DETERMINATION OF WHETHER UNDER THE TOTALITY OF THE CIRCUMSTANCES REFLECT SHE POSSESSED AN OPPORTUNITY FOR REFLECTION.

### A.  Facts in Support of Granting this Petition

In the late evening of August 25, 2012, Austin Police responded to a distress call from a home in central-north Austin relating to an assault which had occurred in Buda, Hays County, Texas earlier that evening. Officer Russell Rose responded to the call and met with the complainant, Melissa Beatty, and her friend, Florence Briseno, at Briseno's home. [Vol. 3 Reporter's Record ("R.R."): 26 - 27]. Beatty was visibly injured and upset. [Vol. 3 R.R.: 28 - 30, 42]. After a preliminary discussion outside, Rose and the two women went inside Briseno's home. Beatty, during intermittent moments of calm and emotionality, related to Rose that she had

2

been assaulted by her boyfriend, Petitioner, earlier that evening at a friend's home in Buda. [Vol. 3 R.R.: 29 - 30, 33 -34]. After the assault, Petitioner's sister, who had been present, drove Beatty to her friend Briseno's home in Austin. [Vol. 3 R.R.: 36]. Beatty specifically denied physically provoking the fight, claiming her participation had only been verbal. [Vol. 3 R.R.: 34 - 35, 49 - 50]. Petitioner timely objected that Beatty's statement to Officer Rose was hearsay, and did not meet any exceptions to the Hearsay Rule. [Vol. 3 R.R.: 32].

A police Victim Services officer, Stephanie Burgess, responded to the officer's call and, after Rose's questioning of Beatty, a process which took approximately an hour, also questioned Beatty. [Vol. 3 R.R.: 38, 77 - 78]. As with Officer Rose, Beatty as intermittently calm and emotional during her conversation with Burgess. She described Beatty as "calm and then she would get emotional and tearful at times when talking about certain things." [Vol. 3 R.R.: 79 - 80]. Beatty displayed a bruise on her arm and told Burgess that Petitioner assaulted her a few days before the recent incident by pushing her against a hard object. [Vol. 3 R.R.: 83]. Beatty did not claim during her statement to Burgess that she had physically provoked the altercation with Petitioner. [Vol. 3 R.R.: 86]. Petitioner timely objected that Beatty's statement to the Burgess, specifically noting that her statements "analysis" and "deep reflection." [Vol. 3 R.R.: 81]

The following day, around 1 p.m., Austin Police Officer Jason Castillo

3

reported to the residence Beatty shared with Petitioner as part of a "civil standby" to supervising her removal of her property. [Vol. 3 R.R.: 90, 94]. Castillo asked Beatty some background questions and she related in detail her fight with Petitioner the previous evening. [Vol. 3 R.R.: 94 - 96, 99.] Beatty did not admit that she had initiated the physical altercation. [Vol. 3 R.R.: 99].

Florence Briseno, testified that she was at home on August 25 when Beatty called her and asked to come over because she had a fight with Petitioner. [Vol. 3 R.R.: 157 - 158]. She arrived a while later and Briseno noticed blood on her legs and that she had been crying. [Vol. 3 R.R.: 158, 167]. Briseno related that Beatty told Briseno that Petitioner had violently "beat her" and testified the details of the assault related to her by Beatty. [Vol. 3 R.R.: 161]. During this account, Beatty also revealed two other incidents of abuse upon her by Petitioner on prior occasions. [Vol. 3 R.R.: 168]. Briseno called 911 to report the assault. [Vol. 3 R.R.: 162 - 163]. While waiting, Beatty related to her friend that she was receiving constant text messages from Petitioner wanting to speak with her. Petitioner texted Beatty throughout the two days that she remained with Briseno. [Vol. 3 R.R.: 164 - 167].

Hays County Sheriff's Office Detective Mark Opiela was assigned the investigation initiated by Austin law enforcement and conducted the investigation in Hays County. [Vol. 3 R.R.: 123 - 124]. He met with Beatty two days after the alleged offense. He described her statements to him of the offense were consistent

4

with her earlier statements the Austin police. [Vol. 3 R.R.: 125 - 126]

Petitioner's employer, Scott Hill, testified that Beatty and Petitioner were visiting him in Buda when the incident occurred. [Vol. 3 R.R.: 178 - 179]. He did not see the altercation between the two, but at some point during the evening, Beatty ran into the house asking him to help her. [Vol. 3 R.R.: 180 - 181]. Petitioner walked in after her and the two played a cat and mouse game around the furniture. [Vol. 3 R.R.: 182]. Hill retrieved a pistol from his bedroom, confronted Petitioner, and after a brief struggle, evicted Petitioner, who then drove off. [Vol. 3 R.R.: 182 - 183, 185].

Beatty testified at trial, but claimed that she had initiated the fight. She stated that she and Petitioner had gotten into an argument after she became angry upon discovering Petitioner had been receiving text messages about another woman. [Vol. 4 R.R.: 15 - 16, 43 - 44]. She had been drinking throughout the evening and became aggressive. [Vol. 4 R.R.: 19, 43 - 44]. The argument subsided for a while, but subsequently re-ignited, during which she slapped and pushed Petitioner. [Vol. 4 R.R.: 17, 45 - 46]. He pushed her back and the two engaged in a shoving match. [Vol. 4 R.R.: 17 - 18]. She grabbed Petitioners hair, pulling him off balance and the two fell, grappling on the rocky ground. [Vol. 4 R.R.: 18 - 19, 20 - 22, 25]. She eventually got up and went into the house and told Hill to remove Petitioner's property from her house. [Vol. 4 R.R.: 23, 46].

5

Beatty later went to her friend, Florence Briseno's, house. [Vol. 4 R.R.: 47]. While relating her altercation with Petitioner to Briseno, she withheld her own aggressive conduct to make herself appear better, and was concerned that she might get into trouble for initiating an assault on Petitioner. [Vol. 4 R.R.: 11, 47 - 48, 48 - 49, 50 - 51, 53, 55].   Briseno was herself a victim of domestic abuse and was aggressive in pressing Beatty to initiate a complaint against Petitioner. [Vol. 4 R.R.: 50, 52, 69].

The jury subsequently convicted Petitioner of the charged offense. [Vol. 4 R.R.: 121 - 122].

Petitioner challenged on appeal the admission of Beatty's statements as excited utterances to Rose, Burgess, Castillo and Briseno but the Third District Court of Appeals held the testimony was admissible. *Robertson v. State*,   03-13-00381-CR, slip op. at 3 - 6 (Tex.App. – Austin, July 23, 2015).

### B.    Argument and Authority

I.    Established  precedent on the "excited utterance" exception is based on <u>the speaker's incapability of reflection rather than her emotional state *vel non* at the time of the statement.</u>

This Court is presented with whether the Third District Court of Appeals has failed to consider the key inquiry under the excited utterance exception to the Hearsay Rule  – the speaker capacity for reflection – and substituted a narrower inquiry into

6

the speaker's emotional state *vel non* at the time of her statement.

The "excited utterance" exception to the Hearsay Rule, Tex.R.Evid. Rule 803(2), has been discussed in scholarly commentary as well as by the courts of appeals. The exception is premised on the ground that statements which are *not the product of conscious reflection* are sufficiently reliable as evidence because they are free from the dangers of intentional fabrication. Vol. 2 *McCormick on Evidence*, § 272 at 365 (7th Ed. 2013).[1] The Supreme Court has also commented that the basis for admission of an "excited" utterance is premised on the statement having been made prior to the opportunity for conscious reflection. *Crawford v. Washington*, 541 U.S. 36, 58 n.8 (2004) ("to the extent the hearsay exception for spontaneous declarations existed at all [in common law], it required that the statements be made "immediat[ely] upon the hurt received, and *before* [*the declarant*] *had time to devise or contrive any thing for her own advantage*.") (emphasis added) (quoting *Thompson v. Trevanion*, Skin. 402, 90 Eng. Rep. 179 (K.B. 1693).

This Court has discussed the excited utterance exception in a series of seminal

---

[1] Even this premise, based on common law principles, is not without criticism, however as empirically unsupported. *See McCormick*, § 272, at 366; David Crump, The Case for Selective Abolition of the Rules of Evidence, 35 Hofstra L. Rev. 585, 615 (Winter 2006); *and*, John E.B. Myers *et al.*, Hearsay Exceptions: Adjusting the Ratio of Intuition to Psychological Science, 65 Law & Contemp. Probs. 3, 8 (2002) (noting that field of psychology "has little direct [empirical] evidence" to support premise of excited utterance exception.). *See also*, *United States v. Boyce*, 742 F.3d 792, 801 (7th Cir. 2013) (Posner, Circuit Judge, concurring) (""The entire basis for the [excited utterance] exception may . . . be questioned.") (quoting 2 *McCormick on Evidence* § 272, p. 366 (7th ed.2013)).

cases, defining the inquiry into whether a statement meets the criteria for admission. In *Zuliani v. State*, 97 S.W.3d 589 (Tex.Cr.App. 2003), the Court explained that whether a statement is an excited utterance under Rule 803(2) is contingent on whether it was made "under such circumstance as would reasonably show that it resulted from impulse rather than reason and reflection." *Id.*, 97 S.W.3d at 596. This is because, for an excited utterance, the "event speaks through the individual" rather than the individual relates the event. *Id.*, at 595. Whether time has passed between the event and its relation, as well as whether the declarant is responding to questions are relevant considerations but the "key" inquiry is "whether the declarant was still *dominated* by the emotions, excitement, fear, or pain of the event." *Id.*, at 596 (emphasis added).

In *Apolinar v. State*, 155 S.W.2d 184 (Tex.Cr.App. 2005), the Court again addressed an excited utterance, this time in the content of whether a statement made by a complainant soon after awaking from surgery for his injuries qualified as an excited utterance. *Id.*, 155 S.W.3d 184. The Court held the statement admissible, observing that the complainant had lacked a "meaningful opportunity to reflect between the time when he was attacked and when he gave the statement." *Id.*, at 190. Significantly, the Court repeatedly stressed that the complainant had been "unconscious, heavily medicated, or incoherent" throughout the time period between the robbery and his statement, rendering conscious reflection of events unlikely. *Id.*,

at 185, 188, 189, 190.

More recently, in *McCarty v. State*, 257 S.W.3d 238 (Tex.Cr.App. 2008), the Court addressed the extent to which the passage of time vitiated against a finding that a 5-year old's outcry of abuse was an excited utterance.[2] While upholding the admission of the child complainant's sudden outcry in response to a triggering behavior reminiscent of the original abuse, the Court qualified that the particular circumstances evidenced the child had not been able to consciously reflect on her statement. *Id*., at 239 n.3, and 241 & n.6.

*Apolinar* and *McCarty* represent logically reconcilable outliers to the general rule under *Zuliani*: a statement must be made while the speaker is dominated by the event she relates, speaking under circumstances in which she had not had an opportunity to consciously reflect upon her statement prior to speaking. Each case is premised upon the speaker's inability to have meaningfully reflected upon the events related. In *Apolinar,* the speaker had been a semi-comatose, heavily medicated individual; in *McCarty*, a child of tender years.

While *Zuliani* incorporated the speaker's emotional state into the analysis, this Court subsequently clarified that it is not the fact that the speaker is emotional at the time of her statement, but whether she is incapable of conscious reflection. The

---

[2] The general rule is that when the "time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process." McCormick, § 272, at 370.

9

speaker's emotional condition in its own right is not a substitute for the required analysis of whether the circumstances demonstrate the presence or absence of conscious reflection. *See Martinez v. State*, 178 S.W.3d 806, 814 - 815 (Tex. Cr. App. 2005). *See also*, *Sandoval v. State*, 409 S.W.3d 259, 285 - 286 (Tex.App. - Austin 2013); *Hughes v. State*, 128 S.W.3d 247, 252 - 255 (Tex.App.-Tyler 2003); *Glover v. State*, 102 S.W.3d 754, 763 - 766 (Tex.App. – Texarkana 2002); *Gay v. State*, 981 S.W.2d 864, 867 (Tex.App. – Hous [1ˢᵗ Dist.] 1998); *Mosley v. State*, 960 S.W.2d 200, 204 (Tex.App. – Corpus Christi 1997); *and*, *Vera v. State*, 709 S.W.2d 681, 684 (Tex.App.-San Antonio 1986).

      ii.    The Third Court of Appeals' substitution of Beatty's emotional state for an inquiry into her opportunity for reflection conflicts with published authority from the Eleventh Court of Appeals.

The Third District Court of Appeals' analysis avoided the inquiry into whether the circumstances preceding Beatty's multiple and prolonged statements demonstrated an adequate opportunity for reflection, and focused instead upon her emotional demeanor. In essence, the Court substituted her emotional state for the deeper analysis, necessarily a multi-factored contextual one, of whether the circumstances leading up to the statement permitted, or precluded reflection. *Robertson*, 03-13-00381-CR, slip op. at 3 - 6.

The Court of Appeals's consistently and erroneously shifted its inquiry from to the key inquiry for an excited utterance to the simple inquiry in Beatty's emotional

10

demeanor *vel non*. In doing so, the Court did not evaluate the circumstances, but simply ignored them. For instance, Beatty was emotional during her recitation to Officer Rose, albeit only intermittently so, "crying" at times, and then calming down to continue. [Vol.3 R.R.: 29 - 30]. It was similarly apparent that by the time Beatty related events to Rose, she had removed herself to a "safe" location, where Petitioner was not present, and had spent some time being been consoled by her friend. [Vol.3 R.R.: 27 - 28]. These circumstances at last raised the question of her opportunity for reflection, and question which the Court of Appeals failed to address. The Court's summary conclusion that the trial court's decision fell within the zone of discretion merely expressed a tautology, rather than an analysis of the trial court's evaluation of the totality of the circumstances before it. *See*, *Robertson*, slip op at 3 - 4.

The Court of Appeals similarly failed to address whether the record reflected Beatty's opportunity for reflection by the time repeated her allegations to Stephanie Burgess, around an hour after she had started speaking with Officer Rose. [Vol. 3 R.R.: 78 - 79]. And as with Rose, Beatty's emotional demeanor alternated throughout her discussion with Burgess. [Vol. 3 R.R.: 79 - 80]. The Court of Appeals held the statement was admissible, but concluded the court had not abused its' discretion because it issued a limiting instruction to the testimony to the issue of Petitioner's intent and to rebut a defensive theory. *Robertson*, slip op at 6. Yet the Court's reliance on the limiting instruction simply ducked the question before that court –

11

whether, in light of the circumstances, including the passage of time and the fact of repetition, Beatty's statement was admissible for *any* purpose as a hearsay exception.

The Court of Appeals also failed to address whether the totality of the circumstances attendant to Beatty's statements Officer Castillo in the afternoon following the incident, and after her previous accounting to Rose and Burgess, reflected an opportunity for reflection. Rather, the Court merely concluded that despite the long interim, the facts before the trial court were not so incorrect as to fall outside the zone of reasonableness. *Robertson*, slip op. at 5. Yet even under the relatively lenient abuse of discretion standard, the inquiry into whether a statement is an excited utterance requires the court conduct a fact-specific inquiry into the evidence before the trial court and whether the trial court's evaluation was unreasonable in light of that evidence. Thus, while recognizing the issue, the Court of Appeals simply punted.

Finally, the Court of Appeals failed to address Beatty's opportunity for reflection before relating events to Florence Briseno, leaving unaddressed the circumstances which at least raised the possibility of conscious reflection despite her emotional condition. These circumstances were not insignificant: Briseno testified that Beatty had telephoned her – a deliberative act – and her voice was "a little shaky" but did not reflect anything more than an argument had occurred. [Vol.3 R.R.: 157 - 158]. Enough time had passed before Beatty;'s arrival that Briseno believed her

friend had changed her plans to come over. [Vol.3 R.R.: 158]. In holding Beatty's statements met Rule 803(2), the Court of Appeals focused upon Beatty's emotional demeanor and physical appearance, but eschewed analysis of whether the facts before the trial court reflected the opportunity for reflection. *Robertson*, slip op. at 4.

The Court of Appeals' emphasis upon Beatty's emotional demeanor to the exclusion of an enquiry into her opportunity for reflection clashes with the analysis for excited utterances in *Zuliani* and subsequent cases. This conflict is exemplified by the Eleventh District Court of Appeals recent decision in *Tienda v. State*, ___ S.W.3d ___, 11-11-00283-CR (Tex.App. - Eastland 5-14-2015), which emphasizes this point.

In *Tienda*, the Eastland Court of Appeals addressed statements made by a teenaged complainant to a police officer in the course of an investigation into an indecency with a child which had occurred months earlier. The detective explained at trial that the complainant "became emotional at times during the interview and he had to stop the interview a couple of times because [the complainant] began to cry." *Id.*, at ___, slip op. at 11. Citing *McCarty v. State*, the trial court admitted a portion of the audio recording of the complainant's statement under the excited utterance exception. *Tienda*, ___ S.W.3d at ___, slip op. at 11.

The Eleventh District Court of Appeals concluded that despite the complainant's emotional condition, it had been error to admit her statement because

13

the fact of her emotional state when recounting events was not sufficient to support admission as an "excited" utterance. Rather, the focus must be upon the speaker's capacity for reflection about the incident prior to making the statement:

> There is no question that [the complianant] was dominated by emotions during the second section of the interview. *However, emotional domination alone is not sufficient to constitute an excited utterance. . . .* [T]he Court of Criminal Appeals wrote: "Stated differently, a reviewing court must determine whether the statement was made 'under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection.'" . . . . The court subsequently noted in Apolinar that the excited utterance exception is "based on the assumption that the declarant is not, at the time of the statement, capable of the kind of reflection that would enable him to fabricate information." Apolinar, 155 S.W.3d at 186 (citing Zuliani, 97 S.W.3d at 595).
>
> . . . . While [the complainant's] responses were obviously emotional, *they were not spontaneous enough to avoid the possibility of fabrication as required by McCarty*.

*Tienda*, ___ S.W.3d at ___, Slip op. at 16 - 17 (internal cites omitted).

The Court of Appeals failed to apply the proper inquiry called for by this Court's precedent. True, in addressing a single claim the Court acknowledged the passage of time between the event and Beatty's account to Officer Rose, *Robertson,* slip op. at 3 - 4, but its analysis stopped there, not addressing the deeper question. Throughout the excited utterance claims, the Court simply avoided any inquiry into the opportunity for reflection, substituting Beatty's emotional demeanor in itself for the deeper analysis of "whether the statement was made under such circumstances as would reasonably show that it *resulted from impulse rather than reason and*

14

*reflection.*" *Tienda*, ___ S.W.3d at ___, slip op. at 17 (quoting *Zuliani*, 97 S.W.3d at 596). The inquiry into the opportunity for reflection marks the critical distinction in the admission of an excited utterance, distinguishing between the "event speak[ing] through the individual," *Zuliani*, 97 S.W.3d at 595, or whether the speaker merely "narrat[es] . . . a painful event." *Tienda*, ___ S.W.3d at ___, slip op. at 14. Whether Beatty was emotional each time she related the assault was not dispositive. *See Martinez*, 178 S.W.3d at 814 - 815; *and*, *Tienda*, ___ S.W.3d at ___, Slip op. at 16 - 17. In contrast, whether *all* the circumstances surrounding Beatty's her several statements, including her emotional condition, precluded her from reflecting on events before she related them to the others was the proper inquiry.

The Third District Court of Appeals excited utterance analysis misapplied this Court's excited utterance precedent as well as conflicts with long standing common law. Further, Court's misplaced reliance upon a speaker's emotional demeanor to the exclusion of the totality of the circumstances weighing upon the opportunity for reflection posits the Third Court of Appeals' continuing and systematic misapplication of this aspect of the law unless corrected by this Court.

## Conclusion and Prayer

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully requests this Honorable Court to grant this petition for discretionary review, permit full briefing and argument on this issue, and to subsequently grant such relief to which

15

Petitioner may be entitled.

Respectfully submitted,

Law Office of Alexander L. Calhoun
4301 W. William Cannon Dr., Ste. B-150 # 260
Austin, TX 787049
Tele: 512/ 731-3159
Fax: 512/ 233-5496
Email: alcalhoun@eathlink.net

BY:_/s/ ___*Alexander L. Calhoun*___
 Alexander L. Calhoun
 State Bar No.: 00787187

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Petition for Discretionary Review was served upon the following parties on October 9, 2015 by United States Mail:

Hays County District Attorney
Hays County Government Center
712 South Stagecoach Trail, Ste. 2507
San Marcos, TX 78666.

and

State Prosecuting Attorney
P.O. Box 13046
Capitol Station
Austin, Texas 78711

/s/   *Alexander L. Calhoun*

Alexander L. Calhoun

## Certificate of Compliance

I hereby certify that the foregoing Petition for Discretionary Review was created in 14 point type, Times New Roman font, and consists of **4326** words.

/s/   *Alexander L. Calhoun*

Alexander L. Calhoun

Appendix A

***Anthony Boyd Robertson v. State of Texas***,   No. 03-13-00381-CR
(Tex.App. – Austin, July 23, 2015)

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00381-CR

**Anthony Boyd Robertson, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
## NO. CR-12-0972, HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Anthony Boyd Robertson was convicted of family-violence assault, repeat offense. *See* Tex. Penal Code § 22.01(b). In five issues, he complains about the trial court's admission of evidence and alleged prosecutorial misconduct. The parties are familiar with the facts, procedural history, and applicable standards of review. Accordingly, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.4. Having reviewed the record and concluded that appellant has failed to demonstrate any reversible error as discussed herein, we will affirm the trial court's judgment of conviction.

### *Hearsay*

In his first issue, appellant complains about the trial court's admission of hearsay testimony from four witnesses: Austin Police Department (APD) Officers Russell Rose and Jason Castillo; Florence Briceno, the complainant's friend; and APD Victim Services Counselor

Stephanie Burgess. Over appellant's objection, the testimony of Officer Rose, Officer Castillo, and Briceno relating what the complainant, appellant's then-girlfriend, had told them was admitted by the trial court under the excited-utterance exception to the hearsay rule. *See* Tex. R. Evid. 803(2) (statement relating to startling event or condition made while declarant was under stress of excitement caused by event or condition is not excluded by hearsay rule); *see also Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005) (exception is based on assumption that declarant is not, at time of statement, capable of reflection that would enable her to fabricate information). The trial court admitted Burgess's testimony over appellant's objection with an instruction limiting its purpose.

To determine whether a statement is an excited utterance, trial courts should determine "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition" when the statement is made. *Apolinar*, 155 S.W.3d at 186 (quoting *Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003)). Factors that the trial court may consider include the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving. *Id.* No factor alone is dispositive. *Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995), *overruled on other grounds, Mosley v. State*, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998).

Officer Rose was the first official to arrive at Briceno's house upon receiving a call relating that a woman had been assaulted but was no longer at the assault location or in the presence of the perpetrator. He testified that when he arrived at Briceno's house, "it was fairly obvious that [the complainant] had been involved in some type of disturbance" and that she was "being consoled"

2

by Briceno and had "obvious injuries." He indicated that the complainant's injuries included bleeding knees and swelling and abrasions on the left side of her face and forehead and that she was holding an ice pack to her face and head. Officer Rose testified that as he spoke to the complainant, she was "going back and forth, emotionwise" and crying intermittently and that it took between a few seconds to a minute throughout the interview to "calm her down" enough so that she could explain what had happened. He further testified that the complainant appeared to still be under the stress and excitement of what had just happened and that she was still in pain. After this predicate was laid, *see Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (proponent of evidence bears burden of establishing predicate for admission of hearsay statement), Officer Rose testified about what the complainant told him: after the couple had a heated argument about a text message, appellant grabbed the complainant, dragged her to the ground by her hair, and punched her in the face and head.[1]

In light of Officer Rose's predicate testimony about the complainant's injuries, pain, stress, and emotional state, as well as the relatively short period of time between the alleged assault and the complainant's statement to him (the statement occurred within two or three hours of the

---

[1] The complainant provided a different account at trial: she got angry about a text message regarding another woman and confronted appellant about it, tripped and hurt her knees, and then slapped and pushed appellant. She further testified that the physical altercation progressed when appellant pushed and shoved her in return and that they both fell to the ground and "scuffled" and that she did not recall being punched in the face. She explained the discrepancy in her accounts by indicating that her previous accounts were intended to "ma[ke her]self out to be the better person." She also signed an Affidavit of Non-Prosecution a few months before appellant's trial seeking to drop the charges and indicating that she had been in communication with appellant via letters and that, although she was not changing her original allegation, she simply did not feel that his actions warranted a felony conviction.

3

assault), we cannot conclude that the trial court's admission of the complainant's hearsay as an excited utterance was an abuse of discretion. *See Zuliani*, 97 S.W.3d at 595 (trial court does not abuse its discretion in admitting hearsay under exception unless decision is so clearly wrong as to lie outside zone within which reasonable persons might disagree). We overrule appellant's first issue as to Officer Rose's testimony.

The State laid the following predicate for admission of the complainant's statements to Briceno as an excited utterance: Briceno testified that she did not recognize the complainant (even though she was her "best friend") when she arrived at her house due to the blood coming down her legs, the fact that she had been crying, and the swelling and "whelping" of her face. Briceno further testified that the complainant was shaking and crying and that she looked "horrible" and did not have the "physical appearance" of her friend. Briceno said that the complainant was "devastated" and crying so hard that it was difficult for Briceno to understand her words. The complainant's statements to Briceno occurred even closer in time to the alleged assault than those she made to Officer Rose. This predicate supports the reasonable conclusion that the complainant was still dominated by the emotions, excitement, fear, or pain of the alleged assault when she made her statements to Briceno. *See Apolinar*, 155 S.W.3d at 186. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the complainant's hearsay statements to Briceno under the excited-utterance exception. We overrule appellant's first issue as to Briceno's testimony.

Appellant complains of the following hearsay testimony of Officer Castillo, who spoke with the complainant the afternoon after the alleged assault while on "civil standby" to supervise the removal of her belongings from the residence that she shared with appellant: "the gist

4

of [what the complainant told me] was they had been out with friends, argued and that [appellant] assaulted her" and that the complainant had not initiated any physical violence with appellant. Before Officer Castillo testified such, he indicated that the complainant seemed to him to be "having a hard time" from the event the prior night and that she was "emotional," "choked up," and still under the stress of the event. He also testified that her face was badly bruised, including a very "obvious" black eye.[2]

The predicate to Officer Castillo's testimony about the complainant's emotional state and visible injuries supports an excited-utterance ruling, while the relatively long period of time that ensued between the alleged assault and the complainant's statements weigh against the conclusion that her statements "resulted from impulse rather than reason and reflection." *See Zuliani*, 97 S.W.3d at 595 (excited utterance "represents an event speaking through the person rather than the person speaking about the event"). Because of the tension between these two factors, we cannot conclude that the trial court's decision was so clearly wrong as to lie outside the zone of reasonable disagreement. *Id.* However, even if the trial court erred in admitting Officer Castillo's statements about what the complainant told him—which amounted to nothing more than that the appellant "assaulted her" and that she did not initiate the violence—those same facts were proven by other admissible evidence, rendering the error harmless. *See Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991). Accordingly, we overrule appellant's first issue as to Officer Castillo's testimony.

---

[2] After the objected-to hearsay statement, Officer Castillo explained that the complainant's injuries were "very significant" and in the "top five" of all the family-violence injuries he had seen in his years of service.

5

APD Victim Services Counselor Burgess testified about what the complainant told her about appellant's prior abuse, not as to what the complainant told her about the events on the night in question. Appellant objected on the basis of hearsay, which the trial court overruled (while allowing a running objection). The trial court also issued a limiting instruction about the purpose of the testimony, admonishing the jury that Burgess's testimony about what the complainant told her about appellant's prior abuse could be used for two purposes only: to show appellant's intent and to rebut his self-defense theory. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *see also* Tex. R. Evid. 404(b). By definition, then, Burgess's testimony about what the complainant told her was not hearsay because it was offered for a purpose *other than* the truth of the matter asserted. *Cf.* Tex. R. Evid. 801(d) (hearsay is statement, other than one made by declarant while testifying at trial, offered in evidence to prove truth of matter asserted). Accordingly, the trial court did not abuse its discretion in admitting Burgess's testimony over appellant's hearsay objection, and we overrule appellant's first issue in its entirety.

### *Prosecutorial misconduct*

In his second issue, appellant contends that the State committed prosecutorial misconduct by "withholding material facts when establishing the predicate for the complainant's excited utterances" and thereby misleading the court when it presented Briceno's testimony at the conclusion of its case rather than in the appropriate chronological sequence by which the complainant made her statements to the various witnesses on the evening in question. Essentially, appellant argues that because the complainant first spoke to Briceno, the State presented a "false picture" to the court by reserving the facts surrounding those first statements until after the court had

6

already ruled on the admissibility of the complainant's later-in-time hearsay statements to other witnesses. The State responds that appellant failed to preserve this issue for review by not objecting at trial. *See Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *see also* Tex. R. App. P. 33.1. We agree with the State.

Prosecutorial misconduct is an independent basis for objection that must be specifically urged to preserve error. *Hajjar v. State*, 176 S.W.3d 554, 566 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd); *see also Penry v. State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995) (proper method of preserving error in cases of prosecutorial misconduct is to object on specific grounds, request instruction that jury disregard conduct, and move for mistrial). Appellant did not object at trial to the allegations of prosecutorial misconduct that he now makes on appeal. He has, therefore, failed to preserve the error for appellate review, and we accordingly overrule his second issue. *See Banda v. State*, 890 S.W.2d 42, 61 (Tex. Crim. App. 1994) (failure to object at trial to actions of prosecutor that allegedly violated due-process rights does not preserve error for appeal).

### *Opinion testimony*

In his third and fourth issues, appellant complains that the trial court erred in admitting testimony of Officers Rose and Castillo offering opinions about the truthfulness of other witnesses, which generally is inadmissible. *See Sandoval v. State*, 409 S.W.3d 259, 292 (Tex. App.—Austin 2013, no pet.). He complains about the following question that the State asked of Officer Rose: "Did you—from [the complainant's] demeanor and everything that you saw about her, did you have any indication that she was being, you know, anything other than truthful with you?"

Officer Rose answered, "No." Appellant objected after Officer Rose had answered the question, and the trial court overruled the objection.

Appellant failed to preserve error on the issue of Officer Rose's testimony because he did not object until after the objectionable question had been asked and answered, and he has demonstrated no legitimate reason to justify the delay in objecting. *See Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008); *Sandoval*, 409 S.W.3d at 306. Moreover, even if we were to assume that appellant's objection had been timely, we could not conclude on this record that appellant was harmed. *See Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004) (we may not reverse for non-constitutional error if we have fair assurance that error did not have substantial and injurious effect or influence in determining jury's verdict); *see also* Tex. R. App. P. 44.2(b) (any error that does not affect substantial rights must be disregarded). There was strong evidence of appellant's guilt (in an interview with law enforcement, even appellant admitted to hitting complainant "like a man"), the complainant's injuries were significant (and arguably inconsistent with appellant's theory of self-defense), appellant thoroughly cross-examined Officer Rose to include a concession that he was not a "human lie detector," the State did not highlight or revisit Officer Rose's testimony, and the objected-to testimony was self-evident (had the investigating officers not believed the complainant, there would likely have been no case for the jury to decide). We overrule appellant's third issue.

In his fourth issue, appellant complains about the trial court's admission over his objection of Officer Castillo's testimony opining that, in his "experience in dealing with these types of cases," it is common for defendants, as they get closer to trial, to "come up with a good cover

story or a good new story . . . that [the investigators] have never heard before as [they] were investigating." Specifically, appellant argues that Officer Castillo was opining on the credibility of criminal defendants as a class, which is improper. *See Hitt v. State*, 53 S.W.3d 697, 707 (Tex. App.—Austin 2001, pet. ref'd) (witness may not directly testify that class of persons to which particular witness belongs is truthful).

Officer Castillo's testimony, as phrased, is more properly characterized as an opinion about criminal investigations based on his experience and knowledge as an investigator rather than a direct opinion about the credibility of criminal defendants as a class; such lay opinions are generally admissible. *See Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002) (observations that do not require significant expertise to interpret and that are not based on scientific theory can be admitted as lay opinions if witness's personal knowledge and experience establishes he is capable of expressing opinion on subject outside realm of common knowledge). Accordingly, we conclude that the trial court's ruling on the admissibility of this evidence was within the zone of reasonable disagreement. *See McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). However, even if the evidence were inadmissible opinion testimony, we would conclude that appellant's substantial rights were not affected by the admission of the testimony based on the record of appellant's trial as a whole. *See* Tex. R. App. P. 44.2(b). We overrule appellant's fourth issue.

### State's notice of intent to introduce evidence of extraneous offenses

In his fifth issue, appellant argues that the trial court erred in admitting evidence of his prior violent acts against a previous girlfriend, Sabrina DeJesus, because the State failed to provide him with timely and specific notice, per his request, of its intent to introduce the evidence.

9

*See Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005) (Rule 404(b) conditions admissibility of other-wrongdoings evidence on State's compliance with notice provision of same rule, and it is error to admit such evidence when State has not so complied); *see also* Tex. R. Evid. 404(b). While the State did provide appellant with notice of its intent to introduce evidence of his prior family-violence convictions, appellant argues that the State was required to inform him that it would be introducing the underlying details of one specific conviction through DeJesus. The State responds that appellant failed to object to the lack of notice and, therefore, waived this issue on appeal. *See Pena*, 353 S.W.3d at 807; *see also* Tex. R. App. P. 33.1.

The reporter's record indicates that the trial court, State, and appellant discussed the admissibility of the DeJesus testimony in a bench conference before she testified. On its own initiative, the State raised the issue of admissibility under Rule 404 from a probative and relevancy standpoint, without mentioning notice. *See* Tex. R. Evid. 404(b) (evidence of other crimes, wrongs, or acts is not admissible to prove character of person to show action in conformity therewith but is admissible for other purposes including motive and intent). Appellant made no argument or objection on any Rule 404 grounds, and the only references to notice appeared in a sidebar argument between the prosecution and defense counsel later in the bench conference as the State was making an offer of proof:

> State: I think that we've given sufficient notice to [defense counsel] previously, and she certainly—
>
> Defense: I would—as to the notice, I got notice of the conviction, but not any other assaultive details or—you know, I got notice of the conviction, that's it.

10

Beyond this reference to notice, appellant did not actually object on that ground, and the *only* objection he made prior to DeJesus's testimony was a non-specific Rule 403 objection:

| | |
|---|---|
| Court: | From the Defense, just as a general comment, if any? |
| Defense: | No. 403 objection—I think that since self-defense has been raised or is going to, they're entitled to get into some things. I'm not sure about—I would steer away—I would prefer to steer away from the controlling, manipulative behavior, but the conviction is fair game. |

*See* Tex. R. Evid. 403 (although relevant, evidence may be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of issues, or misleading jury or by considerations of undue delay or needless presentation of cumulative evidence).

At the conclusion of the bench conference, the trial court noted that it "has not made a ruling on any of the objections at this point," and DeJesus then testified without further objection by appellant or any rulings by the trial court. Appellant did not cross-examine DeJesus or raise the issues of unfair surprise and prejudice that he now asserts on appeal. We agree with the State that appellant failed to preserve error on the issue of whether the State provided sufficient notice about its intent to introduce evidence of extraneous offenses. *See Pena*, 353 S.W.3d at 797 (appellant must make timely, specific objection and obtain adverse ruling to preserve issue). Accordingly, we overrule appellant's fifth issue.

**CONCLUSION**

Having overruled all of appellant's issues, we affirm the trial court's judgment of conviction.

11

_____
                              Cindy Olson Bourland, Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Affirmed

Filed:   July 23, 2015

Do Not Publish